## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NANCY ANAYA-SMITH, next of kin of MICHAEL BRIAN SMITH, deceased, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-20-565-D |
| FEDERATED MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## ORDER

Before the Court is Plaintiff's Motion for Partial Summary Judgment[1] [Doc. No. 13] and Defendant's combined Response to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment [Doc. No. 18]. Plaintiff and Defendant each filed a reply [Doc. Nos. 21, 24]. Plaintiff also filed a suggestion of additional authority [Doc. No. 25] to which Defendant responded [Doc. No. 30]. Accordingly, the briefing is complete with respect to the motions and the matter is now at issue.

## FACTS AND PROCEDURAL BACKGROUND

Michael Brian Smith was killed in a one-vehicle accident on March 24, 2020. Mr. Smith was employed by Fixtures & Drywall Company of Oklahoma ("FADCO") and was

---

[1] Plaintiff's Motion fails to comply with LCvR7.1(e) which requires briefs longer than 15 pages to include an indexed table of contents and an indexed table of authorities. Plaintiff's Motion also fails to include any of the exhibits referenced therein. The Court is nevertheless able to rule on Plaintiff's Motion because the facts are undisputed and Defendant has included a copy of the relevant insurance policy as an exhibit.

acting in the scope of his employment at the time of the accident. The vehicle involved was owned by FADCO and was being driven by Mr. Smith's co-employee. Plaintiff contends that the co-employee's negligence caused the fatal accident. *See* Pl.'s Mot. ¶¶ 2-3; Def.'s Mot. ¶¶ 2-3.

FADCO maintained an insurance policy for the involved vehicle that identifies FADCO as the named insured and extends liability coverage to "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from the ownership, maintenance or use of a covered auto." An "insured" is defined in the policy as FADCO and "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow." The policy excludes "[a]ny obligation for which the 'insured' or the 'insured's' insurer may be held liable under any workers' compensation disability benefits." Pl.'s Mot. ¶¶ 3-5; Def.'s Mot. ¶¶ 5-7. The parties agree that the involved vehicle was a covered auto and the driver was an insured for liability purposes. *Id.*

In addition to the liability policy, Federated offered FADCO the option of purchasing uninsured motorist insurance coverage by using the election form required by Okla. Stat. tit. 36 § 3636(H). The election form provides that the insured "may make one of four choices about Uninsured Motorist Coverage by indicating" which option they want: 1) purchase the same amount of UM coverage as its liability coverage, 2) purchase the minimum amount of UM coverage, 3) purchase an amount less than its liability but more than the minimum, or 4) reject UM coverage. *Id.* FADCO checked the selection rejecting UM coverage. Def.'s Mot. ¶¶ 10-11.

Using a separate form titled "Oklahoma Commercial Auto Coverage Option," Federated also offered FADCO the option of purchasing UM coverage for its directors, officers, partners, owners, and qualified family members, while rejecting coverage for any other person who qualifies as an insured. Federated checked the selection purchasing $1 million in UM coverage for its directors, officers, partners, owners and qualified family members, and rejecting it for other persons. Pl.'s Mot. ¶¶ 8-9; Def.'s Mot. ¶¶ 12-13. Pursuant to this election, an endorsement form titled "Uninsured and Underinsured Motorists Limits of Insurance" was included in FADCO's insurance policy. The endorsement sets forth the $1 million UM coverage limit for directors, officers, partners, owners and qualified family members, and indicates that no UM coverage is afforded to any other person under the policy. Pl.'s Mot. ¶ 8-9; Def.'s Mot. ¶¶ 14-17.

Following the accident, Plaintiff Nancy Anaya-Smith, as next of kin of Mr. Smith, made a claim under FADCO's insurance policy for UM benefits. Federated denied the claim because Mr. Smith was not a director, officer, partner, owner or qualifying family member of FADCO at the time of the accident. This lawsuit followed. Pl.'s Mot. ¶¶ 11-13; Compl. ¶ 4 [Doc. No. 1].

In her Complaint, Plaintiff asserts that Federated denied her UM claim in bad faith and that its coverage scheme violates Oklahoma law and public policy. Compl. ¶ 4. Federated denies Plaintiff's claims and seeks a declaratory judgment that 1) the involved vehicle was not uninsured at the time of the accident because the driver qualified as an insured for liability coverage and 2) Plaintiff is not entitled to benefits because FADCO's rejection of UM coverage for some insureds and not others was valid. Counterclaim ¶¶ 19-

3

47 [Doc. No. 12]. Plaintiff now seeks partial summary judgment on the coverage issue. Federated moves for summary judgment on the coverage issue, the bad faith claim, and its request for a declaratory judgment.

## STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable juror could return a verdict for either party. *Id.* All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.*

"Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party." *Banner Bank v. First Am. Title Ins. Co*., 916 F.3d 1323, 1326 (10th Cir. 2019). When the parties file cross motions for summary judgment, the Court is entitled to assume "'no evidence needs to be considered other than that filed by the parties.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted).

## DISCUSSION

The coverage requirements and policyholder protections related to uninsured motorist coverage are set forth in Okla. Stat. tit. 36 § 3636. The statute requires every automotive liability policy to provide coverage to an insured who is "legally entitled to

recover damages from owners or operators of uninsured motor vehicles." *Id.* at § 3636(A)-

(B). Pertinent to this case, the statute also provides that the insured may reject UM

coverage:

> A named insured or applicant shall have the right to reject uninsured motorist coverage in writing. The form signed by the insured or applicant which initially rejects coverage or selects lower limits shall remain valid for the life of the policy and the completion of a new selection form shall not be required when a renewal, reinstatement, substitute, replacement, or amended policy is issued to the same-named insured by the same insurer or any of its affiliates. Any changes to an existing policy, regardless of whether these changes create new coverage, do not create a new policy and do not require the completion of a new form.
>
> After selection of limits, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured or applicant for insurance, the insurer shall not be required to notify any insured in any renewal, reinstatement, substitute, amended or replacement policy as to the availability of such uninsured motorist coverage or such optional limits. Such selection, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured or an applicant shall be valid for all insureds under the policy and shall continue until a named insured requests in writing that the uninsured motorist coverage be added to an existing or future policy of insurance.

*Id.* at § 3636(G). In requiring UM coverage but permitting an insured to reject it, this

statutory scheme has been described as making UM coverage "mandatory as an option for

all automotive insurance policies," *Raymond v. Taylor*, 412 P.3d 1141, 1144 (Okla. 2017),

or as "requir[ing] that insurers offer UM coverage for every motor-vehicle liability

insurance policy." *Thurston v. State Farm Mut. Auto. Ins. Co.*, 478 P.3d 415, 419 (Okla.

2020).

With this statute as the starting point, the Court must initially resolve the two issues

raised by the parties: 1) whether the vehicle involved in the accident qualifies as an

uninsured vehicle, and 2) whether offering an option to purchase UM coverage for some insureds and not others is contrary to Oklahoma law.

### A. The Status of the Vehicle

As to the first issue, Federated argues that the vehicle involved in the accident had $1 million in liability coverage, and therefore the vehicle is not uninsured or underinsured as a matter of law. Plaintiff counters that the amount of liability coverage is irrelevant because the driver is immune from suit under Oklahoma's Workers' Compensation Act.[2] *See* Okla. Stat. tit. 85A, § 5 (providing that the Act "shall be exclusive of all other rights and remedies of the employee…against the employer, or any…employee."). Because the Workers' Compensation Act precludes her from recovering tort damages against the vehicle driver, Plaintiff argues, the vehicle is effectively uninsured.

The Oklahoma Supreme Court has previously addressed the relationship between UM coverage and the immunity afforded under the Workers' Compensation Act. In *Barfield v. Barfield*, 742 P.2d 1107, 1109 (Okla. 1987), an employee was riding as a passenger in a company vehicle when he was killed in a one vehicle accident. After being awarded workers' compensation benefits, the employee's surviving spouse sought UM benefits under a policy purchased by the employee. *Id.* The insurance company argued that the claimant was not "legally entitled to recover" UM benefits because the Workers' Compensation Act was the exclusive remedy under which an employee could recover damages for an on-the-job injury. *Id.* at 1110-1111.

---

[2] The liability policy also provides an exclusion for any obligation for which the insured may be held liable under a workers' compensation law. *See* Doc. 18-2 at 27.

The Oklahoma Supreme Court disagreed. After noting that a claim for UM benefits is a "purely contractual claim," the Court held that "Employer-Employee tort immunity under the Workers' Compensation Act does not preclude recovery under one's own contract of insurance with an insurance carrier unrelated to the employer-employee relationship." *Id.* at 1112. In reaching this conclusion, the court explained that the words "legally entitled to recover" in § 3636 "'simply mean that the insured must be able to establish *fault* on the part of the uninsured motorist.'" *Id.* (quoting *Uptegraft v. Home Insurance Company*, 662 P.2d 681, 685 (Okl.1983)) (emphasis in *Uptegraft*). Under this standard, it is not necessary for an insured to show he can proceed against an uninsured driver in tort in order to claim UM benefits. *Id.* The Oklahoma Supreme Court then reiterated that "[p]rotection under an uninsured motorist policy is a contractual right resting in the insured and thus may be co-existent with the protection under the Workers' Compensation Act." *Id.*

*Torres v. Kansas City Fire & Marine Ins. Co.*, 849 P.2d 407 (Okla. 1993) extended *Barfield's* holding to permit recovery under an employer's UM policy. Like the instant case, *Torres* involved an employee who was killed in a one-vehicle accident while riding as a passenger in a vehicle owned by his employer and driven by a co-employee. *Id.* at 409. The employer's liability policy included UM coverage and the parties agreed that the deceased employee was an insured under the policy. *Id.* After recovering benefits under the Workers' Compensation Act, the plaintiff sued to recover UM benefits from the insurer. *Id.*

The Oklahoma Supreme Court once again rejected the insurer's argument that UM coverage did not apply because the co-employee driver was immune from liability under the workers' compensation laws. *Id.* The intention of the parties "was that UM coverage would be available once it was determined the party seeking coverage was an insured under the policy, that the uninsured tortfeasor causing damages was at fault and the extent of those damages was shown." *Id.* at 412. Accordingly, the plaintiff was allowed to recover UM benefits from the employer's policy even though the driver was immune from tort liability. *Id.*

Plaintiff relies on *Barfield* and *Torres* to argue that a tortfeasor who is immune under the workers' compensation scheme can qualify as an uninsured driver for purposes of determining UM coverage. Federated contends these cases do not directly address the status of the vehicle and the applicable policies most likely contained an exclusion that rendered the vehicle uninsured. This same dispute was at issue in *Stand v. Hudson Ins. Co.*, No. 17-CV-0129-CVE-JFJ, 2017 WL 11474147 (N.D. Okla. Nov. 2, 2017). There, the court concluded that

> *Barfield* and *Torres* do not specifically discuss whether an immune tortfeasor is uninsured under § 3636, but in both cases the Oklahoma Supreme Court found that an insured could recover UIM benefits when the insured could not directly collect under an automobile liability insurance policy after receiving workers' compensation benefits. Neither *Torres* nor *Barfield* makes any sense unless it is implied that an immune tortfeasor is treated as an uninsured motorist as a matter of Oklahoma law… .The Oklahoma Supreme Court has not expressly stated that a tortfeasor immune from suit due to the exclusive remedy of workers' compensation is uninsured, but the Court would be ignoring the clear implication of *Barfield* and *Torres* if it were to find to the contrary.

*Id.* at *4.

The Court agrees with the analysis in *Stand*. The vehicle involved in the accident was covered by a liability policy, but none of those funds are available to Plaintiff because the co-employee driver is immune from tort liability under the Workers' Compensation Act. Consistent with *Barfield* and *Torres,* this immune tortfeasor is the equivalent of an uninsured driver for the purposes of determining UM benefits. Accordingly, Federated is not entitled to a declaration that the vehicle was not an uninsured vehicle at the time of the accident.

**B. The Status of the Policy**

Resolving the uninsured status of the involved vehicle is, of course, only the first step. To recover UM benefits and succeed on her claim, Plaintiff must also establish that the decedent was insured under the policy. On this point, Federated notes that FADCO rejected UM coverage by completing the written form required by the § 3636, but then opted to purchase UM coverage for FADCO's directors, officers, partners, owners, and qualified family members. Federated contends that the decedent does not qualify for UM coverage because he falls into none of those categories. Plaintiff counters that a policy which provides UM coverage for one class of insureds but rejects it for others is contrary to Oklahoma law and public policy. She specifically points to a section of the statute which states that "selection, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured or an applicant shall be valid for all insureds… ." Okla. Stat. tit. 36 § 3636(G).

Although Oklahoma has not directly addressed the precise issue presented here, several other states have had the opportunity to consider UM policies that provide different

levels of coverage to different insureds. Notably, some states with UM statutes containing similar (although not identical) language about a decision pertaining to "all insureds" have held that limiting UM coverage for certain classes of insureds is against their public policy. *See Balagtas v. Bishop,* 910 N.E.2d 789, 795 (Ind. Ct. App. 2009) (holding that "the election or rejection of coverage must apply to all insureds"); *Varro v. Federated Mut. Ins. Co.,* 854 So. 2d 726, 729 (Fla. Dist. Ct. App. 2003) (finding that there is "an express statutory policy prohibiting this type of discrimination between insureds" because the statute only permits "a written rejection of the coverage on behalf of all insureds.").

But the majority of states that have encountered these types of policies have upheld them. For example, in *Stoms v. Federated Serv. Ins. Co*., 125 A.3d 1102 (Del. 2015), the Delaware Supreme Court addressed the validity of an insurance policy providing different levels of UM coverage where the applicable statute permitted the insured to reject all UM coverage. In upholding the policy, the court explained:

> [o]nce an insured has purchased the statutory minimum, the insured is free as a matter of contract to procure as much or little optional insurance as it wants, and to allocate it among drivers as it chooses… .To hold that any coverage above the statutory minimum—such as uninsured motorists coverage, for which no level of coverage is statutorily mandated—has to be afforded to all who benefit from a policy would dissuade employers from buying anything above the statutory minimum.

*Id.* at 1106-1107. Numerous other courts have espoused similar rationales in upholding such policies. *See Jones v. Federated Mut. Ins. Co.,* 346 Ga. App. 237, 242, 816 S.E.2d 105, 109 (2018) ("[Plaintiffs] have pointed to no language within the UM Statute as imposing an 'all or nothing' restriction upon uninsured motorist coverage; and we find none"); *Jarrell v. Viking Ins. Co. of Wisconsin*, No. 15-CV-02676-RBJ, 2017 WL 1154025,

at *3 (D. Colo. Mar. 28, 2017) ("Given a policyholder's right to decline coverage, Colorado law allows automobile liability policyholders to elect to obtain UM/UIM coverage for some 'insureds' but not others"); *Federated Mut. Ins. Co. v. Vaughn*, 961 So. 2d 816, 819 (Ala. 2007) ("…because the greater typically includes the lesser, the right to reject totally UM coverage implies the right to reject it partially"); *Hlasnick v. Federated Mut. Ins. Co.*, 353 N.C. 240, 244, 539 S.E.2d 274, 277 (2000) ("The Financial Responsibility Act nowhere mandates that UIM coverage be equivalent for all persons insured under an automobile insurance policy.").

Although these cases provide context, the Court's decision is ultimately guided by Oklahoma law and policy. In this regard, the Oklahoma Supreme Court has instructed that

> the insurance coverage contract required by the statute is to be liberally construed in favor of the object to be accomplished… .The primary purpose of including uninsured motorist coverage in an insurance policy is to protect the insured from the effects of personal injury resulting from an accident with an uninsured/underinsured motorist.

*State Farm Auto. Ins. Co. v. Greer*, 777 P.2d 941, 942 (Okla. 1989) (internal citations omitted). "However, once it appears that the legislative purpose of § 3636 has been served, the statute's mandate is satisfied." *May v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 918 P.2d 43, 48 (Okla. 1996).

Further, "[w]hen interpreting automobile insurance contracts," courts should strive to "strike a balance between freedom of contract principles and the state's interest in protecting the public." *Ball v. Wilshire Ins. Co*., 221 P.3d 717, 726 (Okla. 2009). Thus, "[p]arties to an insurance contract are…free to agree upon such terms as they wish, including whether to limit or restrict the insurer's liability, as long as their agreement does

not contravene public policy." *Id.* A contract violates public policy only when it "clearly tends to injure public health." *Shepard v. Farmers Ins. Co.*, 678 P.2d 250, 251 (Okla. 1983). The Oklahoma Supreme Court has instructed that the power to invalidate a contract should be exercised "rarely, with great caution and in cases that are free from doubt." *Id.*

Several cases interpreting § 3636 and the limits of UM coverage have put these guiding principles into practice.[3] In *Shepard*, a response to a certified question, the Oklahoma Supreme Court considered whether a clause in a UM endorsement excluding a relative of the insured living in the same household if the relative owned an automobile violated the public policy expressed in § 3636. *Id.* The court held that the exclusion was "an unambiguous contract provision" that "contravenes neither the express language of the Oklahoma Uninsured Motorist Act nor its underlying policy of providing coverage for tortious conduct which would otherwise go uncompensated." *Id.* at 251-252. In reaching this conclusion, the court distinguished the exclusion from those it had previously invalidated by noting that the plaintiff had not paid a premium for the policy and was not defined as an insured by virtue of the policy terms. *Id.* at 252.

The availability of UM benefits was also at issue in *Graham v. Travelers Ins. Co.*, 61 P.3d 225 (Okla. 2002). There, Graham was driving his personal vehicle while on business for his employer when he was injured by an uninsured driver. *Id.* at 227. The

---

[3] Given the case law discussed herein, the Court declines Plaintiff's invitation, belatedly raised in her response and reply brief, to certify a question to the Oklahoma Supreme Court on this issue. *See Meier v. Chesapeake Operating L.L.C.*, 778 F. App'x 561, 565 (10th Cir. 2019) (unpublished) ("When we see a reasonably clear and principled course, we will seek to follow it ourselves—even if no state supreme court precedent is directly on point.") (internal quotation marks and citation omitted).

employer maintained an automobile insurance policy that included UM coverage. *Id.* The policy provided liability insurance for employees using personal vehicles on company business but limited UM coverage to only company owned vehicles. *Id.* at 228-229. Because Graham was driving a personal vehicle at the time of the accident, the Court found that "Graham's vehicle clearly was insured for liability and was not insured, under the provisions of the policy, for UM/UIM." *Id.* at 229.

In trying to defeat the unambiguous terms of the policy, Graham argued (much like Plaintiff does here) that

> once an individual is defined as an insured under the contract, as Graham is here by reason of the endorsement to the liability portion of the contract, he is an insured under the UM/UIM portion of the contract. He continues that having chosen to insure Graham and other employees under the liability coverage, § 3636 requires UM/UIM coverage for them. He asserts that this insurance contract is made up of liability and UM/UIM coverages, and that these coverages are not separate contracts.

*Id.* The Oklahoma Supreme Court rejected these arguments. After observing that the employer and the insurer are the parties to the contract and the employer paid the premium, the court explained that

> [s]ection 3636 does not require that every vehicle covered in one policy have a separate document that separately accepts or rejects UM/UIM coverage for that vehicle. [The employer] accepted UM/UIM coverage and limited it to company-owned vehicles. The parties to the contract agreed to those provisions, those provisions are not ambiguous, and there is no public policy in § 3636 that is violated by the agreement of the parties.

*Id.* at 229-230. The court concluded that an employer is "free to exclude employees operating their own vehicles from UM/UIM coverage through the method of limiting UM/UIM coverage to vehicles owned by the company." *Id.* at 230. Important to the court's

decision, however, was that Graham owned the vehicle involved and he therefore had "the opportunity to accept or reject UM/UIM coverage for his personal protection." *Id.*

*Ball v. Wilshire Ins. Co*., 221 P.3d 717, 725 (Okla. 2009), considered whether an insurer who denied UM benefits to a passenger based on an invalid exclusion in a liability policy acted in bad faith. In analyzing the claim, the Oklahoma Supreme Court summarized their prior case law, including *Shepard* and *Graham*, and found that their decisions were "careful to protect the policyholder's choice of self and family protection" but that "[n]o similarly clear expression can be found in our case law obligating the insured and insurer to provide UM protection to persons whose claim to coverage arises solely by reason of their occupancy of a vehicle belonging to the named insured." *Id.* at 729. As the law covering the particular fact pattern involved was unsettled, the court concluded that the insurer had not acted in bad faith. Although *Ball* suggested that the full extent of the protections afforded by § 3636 have not yet been tested, its description of the statute is instructive:

> A salient feature of our UM legislation, distinguishing it from compulsory liability insurance, is the latitude given to the policyholder or applicant to accept or reject UM coverage. Extensive safeguards have been enacted in § 3636 to make certain that the policyholder's choice is knowingly and freely made, but the decision to purchase or decline to purchase UM coverage is left to the policyholder. When a policyholder completely rejects UM coverage, an occupant of a vehicle as to which no UM coverage is available has no independent grounds to claim UM benefits. If the legislative intent with respect to UM coverage is satisfied without any such coverage in a policy, it could arguably be satisfied with the acceptance of UM insurance with agreed-upon exclusions from coverage.

*Id.* at 726-727.

Most recently, the Oklahoma Supreme Court was called upon to interpret the scope of § 3636 in *Lane v. Progressive N. Ins. Co*., ___ P.3d ___, 2021 WL 2658997 (Okla. 2021). There, in response to a certified question, the Oklahoma Supreme Court considered whether an exclusion which operates to deny UM coverage to an insured who recovers at least the mandated minimum in the form of liability coverage contravenes § 3636. The Court found the exclusion invalid because it effectively annulled UM coverage for which a premium had been paid:

> …the exclusion does not merely modify the scope of available uninsured-motorist coverage—it outright negates that coverage. While the policyholder holds an option to accept uninsured-motorist coverage, the insurer carries an obligation to provide it. Section 3636 requires uninsured-motorist coverage separate from liability coverage, whether it is provided within or supplemental to the basic liability policy. Progressive's blanket exclusion effectively ensures that only one form of coverage—for motor-vehicle liability—will ever be available, even though its policyholder has paid for both.

*Id.* at *5. The Court further emphasized that the purpose of § 3636 "is to 'assure each [UM insured] person the full contracted coverage' for which a premium has been paid." *Id.* at *6 (quoting *Burch v. Allstate Ins. Co*., 977 P.2d 1057, 1064) (alteration in *Burch*). Because the policyholders paid premiums for UM coverage that expressly included the plaintiff, the insurer's artfully drafted exclusion could not be allowed to dilute that coverage. *Id.* at *6-7.

Section 3636 requires insurers to supply uninsured-motorist coverage in addition to standard liability coverage, but it offers the insured a choice: accept, reject, or select lower limits. Heeding the guidance imparted by Oklahoma's case law, the Court is persuaded that FADCO's choice to select UM coverage for some classes of insureds and reject UM

coverage for others does not run afoul of § 3636. There is no dispute that Federated offered FADCO the option of accepting or rejecting UM insurance via the statutorily approved form, and FADCO chose to reject coverage. FADCO then chose to extend UM coverage to directors, officrs, and certain others by executing a separate form. Plaintiff argues that this selection must apply to the decedent because the statute provides that "selection, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured or an applicant shall be valid for all insureds under the policy." Okla. Stat. tit. 36 § 3636(G). The Court does not agree with Plaintiff's interpretation of this provision. While it plainly indicates that a policyholder's coverage decisions bind all other insureds under the policy, there is nothing in the statutory text requiring a policyholder to make the same decision for each class of persons covered under the liability policy. Had FADCO rejected all UM coverage outright, the policy would be in compliance with the statute although Plaintiff would have no claim to benefits. If an outright rejection for all persons is permissible, it is difficult to see how providing more coverage for at least some persons contravenes the statute's text or purpose.

This reasoning is consistent with *Shepard* and *Graham*, where the Oklahoma Supreme Court upheld UM policies that excluded certain individuals from coverage (relatives who owned a vehicle and employees driving a personal vehicle, respectively). Recognizing that these limitations were unambiguous contract terms agreed to by the parties, the court honored the policyholder's choice as to how to structure their UM coverage. Although the instant case differs from *Shepard* and *Graham* because the decedent was driving a company vehicle rather than a personal vehicle, the Court does not

16

believe that fact is dispositive. As explained in *Ball*, 221 P.3d at 727, "[e]xtensive safeguards have been enacted in § 3636 to make certain that the policyholder's choice is knowingly and freely made, but the decision to purchase or decline to purchase UM coverage is left to the policyholder." Here, the limitation on UM coverage was an unambiguous contract term agreed to by the parties – FADCO and Federated. Pursuant to these terms, Plaintiff's decedent "clearly was insured for liability and was not insured, under the provisions of the policy, for UM/UIM." *Graham*, 61 P.3d at 229. As in *Graham* and *Shepard*, the policyholder's choice to limit UM coverage in this manner, freely and knowingly made, must be protected and enforced.

Indeed, *Lane* makes clear that a priority of Oklahoma's UM statute is to protect the insured's right to coverage for which a premium has been paid. *Lane*, 2021 WL 2658997 at * 6. FADCO paid a premium for UM coverage for directors, officers, and certain others, and had Federated tried to dilute that coverage through artful drafting or exclusions, the Court might take a different view of the policy. But FADCO never paid a premium for UM coverage for other employees, such as Plaintiff. Thus, unlike in *Lane*, there is no risk that denying Plaintiff's claim will deny an insured their "full contracted coverage for which a premium has been paid." *Id.*

Parties to an insurance contract are "free to agree upon such terms as they wish, including whether to limit or restrict the insurer's liability, as long as their agreement does not contravene public policy." *Ball*, 221 P.3d at 726. Allowing a policyholder to extend UM coverage to some classes of insureds, rather than limiting their choices to complete rejection or universal acceptance of UM coverage, will further the goals of § 3636 – to

17

promote and safeguard UM coverage – while still honoring freedom of contract principles. *See id.* Further, the Court is mindful that the power to nullify contracts made in contravention of public policy should be exercised only "rarely, with great caution and in cases that are free from doubt." *Shephard*, 221 P.3d at 726. This is not one of those rare cases.

The policy issued by Federated to FADCO does not contravene Oklahoma law or policy. Because the insurance policy does not provide UM/UIM coverage for Mr. Smith, Federated has no coverage obligations to Plaintiff. Accordingly, Defendant is entitled to summary judgment on Plaintiff's coverage claim and bad faith claim.[4] Additionally, Defendant is entitled to a declaration that FADCO's rejection of UM coverage was valid and Plaintiff is therefore not entitled to UM coverage under the policy.

## CONCLUSION

For the reasons explained above, Plaintiff's Motion for Partial Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part, as detailed herein.

IT IS SO ORDERED this 16th day of Sepember, 2021.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[4] Even if this were not the Court's ruling, Plaintiff conceded her bad faith claim by failing to respond to Federated's argument that it was entitled to summary judgment on this issue. *See* LCvR7.1(g) ("Any motion that is not opposed within 21 days may, in the discretion of the court, be deemed confessed.").